AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED

FEB -7 2020

David J. Bradley, Clerk of Court

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. H20-0255M
2107 Gray Hawk Lane, Katy, Texas 77449 )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

ATTACHMENT A

located in the _____Southern_____ District of _____Texas_____, there is now concealed *(identify the person or describe the property to be seized)*:

ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Conspiracy to Possess with Intent to distribute Cocaine HCL |
| 18 USC 1956 | Conspiracy to launder monetary instruments |

The application is based on these facts:

ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Jason Havemann, DEA Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date: Feb. 7, 2020

_____
Judge's signature

City and state: Houston, Texas

Christina A. Bryan, U.S. Magistrate Judge
Printed name and title

## ATTACHMENT "A"

### 2107 Gray Hawk Lane, Katy, Texas 77449

The Target Residence is a single story single family residence with brick siding. The Target Residence's address is on the curb directly in front of the house.



SW Affidavit for 2107 Gray Hawk Lane, Katy, Texas 77449          Page **14** of **15**

ATTACHMENT "B"

Based on the facts as outlined in the attached affidavit, your affiant is seeking the requested warrant to seize the following items which are secured within their residences for easy access; or in nearby structures and/or vehicles located on the premises of the residence in which traffickers can retain these records for long periods of time:

   a. U.S. Currency

   b. Illegal Narcotics

   c. Firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons

   d. Jewelry, vehicles and other assets

   e. Money counters, denomination bands, ledgers and adding machines

   f. Books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, transportation, ordering, sale, purchase, and distribution of controlled substance; bank records, corporation records, financial statements, loan agreements, partnership agreements, address books, electronic organizers, diaries, planners, notebooks, photographs, and other documents. Brokerage accounts, and records of offsite locations to store records including safety deposit box keys, records, and receipts, rental agreements for storage facilities, records of mail and answering services including telephone pagers

The term "records" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including computers, DVR's, NVR's and any other electrical, electronic, or magnetic form, such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROM's, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants, such as "Palm Pilots" computers, as well as readouts or printouts from any magnetic storage device, any handmade form, any mechanical form, and any photographic form;

information derived during the investigation there is probable cause to believe that upon search of the **Target Residence**, agents will locate evidence including, but not limited to, narcotics- namely cocaine, bulk currency, safe deposit records, safe deposit keys, bank records, books, notes, ledgers, jewelry, vehicles and other assets or financial records related thereto.

22. Based upon the foregoing, I respectfully submit that there is probable cause to believe that the evidence described in Attachment B will be found in the **Target Residence**, which constitute evidence of the commission of, or are designed or intended as a means of the violation of the federal narcotics laws, including but not limited to the conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846, and the laundering of monetary instruments and relating to engaging in monetary transactions involving property derived from specified unlawful activities, and conspiracy to do the same, in violation of Title 18, United States Code, Section 1956.

23. For the reasons set forth above, I respectfully request that the Court issue a search warrant for the **Target Residence** for the items set forth in Attachment B.

 Jason Havemann, Special Agent
 Drug Enforcement Administration

SUBSCRIBED AND SWORN BEFORE ME THIS \_\_\_\_\_ DAY OF February, 2020.

 Christina A. Bryan
 UNITED STATES MAGISTRATE JUDGE

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS

## SOUTHERN DISTRICT OF TEXAS

I, Jason Havemann, a Special Agent with the Drug Enforcement Administration (DEA), being duly sworn, hereby depose and say:

### A. INTRODUCTION

1. I am a Special Agent with Drug Enforcement Administration (hereinafter "DEA"). I have been a sworn law enforcement officer with DEA since 2008. Presently, I am assigned to the DEA Houston Division Office in Houston, Texas. Your affiant received 19 weeks of training in drug investigations and related legal matters at the DEA Training Academy in Quantico, Virginia. I have gained this knowledge as a result of professional training and experience.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have participated in investigations of drug trafficking, money laundering, complex conspiracies and, among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations. Through my training, education and experience, I have become familiar with the manner in which drug traffickers and money launderers conduct their operations, including but not limited to, their methods of importing and distributing controlled substances, use of telecommunication devices to include cellular telephones and digital display paging devices, use of counter surveillance techniques, and use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions.

3. In addition, your Affiant has experience in the execution of narcotics related search warrants, debriefing of defendants, participating witnesses, informants, and other persons who have personal knowledge of transporting, smuggling, distributing, and concealing unlawful activities. In addition, your Affiant has conducted follow-up investigations concerning the concealment of drug produced assets, money, bank records, etc., and the identification of co-conspirators through the use of ledgers, telephone bills and records, photographs and bank checks, as related to drug trafficking.

4. The information enumerated in the paragraphs below, furnished in support of this affidavit, is either personally known by me, or has been relayed to me by other federal agents or officers, state and local sworn law enforcement officers, or reliable witnesses and or sources of information. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, the affidavit may not contain every fact known to me during the course of the investigation.

B. TARGET RESIDENCE

5. This affidavit is submitted in support of the Government's application for the issuance of warrants to search the following Target Premises:

    (a) **2107 Gray Hawk Lane, Katy, Texas 77449**

**2107 Gray Hawk Lane, Katy, Texas 77449** is a single family residence. Based on the investigation to date, this residence, and others, have been identified to be either owned or used by **Christopher CASTILLO** (hereinafter referred to as **CASTILLO**).

6. Based on your Affiant's experience, training, statements made by other law enforcement agents pertaining to this investigation and the following observations and facts, your Affiant

believes that at this time, at the premises listed in Attachment "A," there is being concealed certain property which constitutes evidence of violations of 21 U.S.C. § 846; and Title 18 U.S.C. § 1956. Your Affiant believes that there is probable cause to believe that within the premises of the residence located at **2107 Gray Hawk Lane, Katy, Texas 77449, (the Target Residence)** which is a single story family residence, those items described in Attachment "B" are concealed.

### C.     BASIS FOR FACTS IN THIS AFFIDAVIT

7.     I make this affidavit, in part, on personal knowledge derived from my participation in the Investigation and, in part, upon information and belief. The sources of my information and belief are:

   a. Oral and written reports about the Investigation and other investigations which I have received from participating agencies;

   b. Oral and written reports about the Investigation based on information from sources of information, which have been received by me, and/or other law enforcement officers;

   c. Physical surveillance conducted by me and/or other law enforcement officers which has been reported to me either directly or indirectly;

   d. Physical evidence seized by me and/or other participating agencies during the Investigation

   e. Information obtained from local, state and federal government agencies, and from public utility providers;

   f. Independent investigation by other participating agencies;

   g. Recorded conversations between the targets of investigation and their associates.

D. CASE BACKGROUND

8. Since around June 2018, DEA Agents in Houston, Texas have been investigating the drug trafficking activities of **CALVILLO**. This investigation has identified members of the drug trafficking organization located in and around Houston, Texas as well as various cities throughout the United States. In particular, this investigation has uncovered an extensive and elaborate narcotics importation and monetary exportation method utilizing vehicles containing hidden compartments as well as commercial airlines. This investigation has also led to multiple arrests, seizures of narcotics, and narcotics proceeds. More specifically, this investigation has identified the **Target Residence** as a location owned by **CASTILLO,** and believed to have been purchased with money which is the fruit of drug trafficking. **CASTILLO** has a criminal history of drug trafficking that dates back to 2005, during which **CASTILLO** was arrested and convicted of trafficking methamphetamine and cocaine. **CASTILLO** sentenced to 210 months prison and released in August 2015.

9. On November 16, 2018, Lynn N. Hughes, United States District Judge, Southern District of Texas, signed an order authorizing the judicial interception of cellular telephone 346-308-0780 which was being utilized by **CALVILLO.**

10. During the wiretap, agents intercepted several telephone conversations between **CALVILLO** who was utilizing cellular telephone 346-308-0780 and **CASTILLO,** who was utilizing cellular telephone 346-317-7938. During these judicially authorized intercepts, it was determined that **CALVILLO** and **CASTILLO** were partners in a methamphetamine trafficking operation which received methamphetamine in gas tank compartments. On November 20, 2018, during the wiretap, **CALVILLO** asked **CASTILLO** to assist with picking up two women who

were arriving in Houston, Texas from the Brownsville, Texas area. Affiant believes the two women were smuggling methamphetamine to Houston, TX. Affiant observed the two women, later identified as **Rosa de EXCINA** and **Maria CAMARILLO**, as they arrived in Houston, Texas with a Ford Explorer. Based on the intercepted telephone conversations between **CALVILLO** and **CASTILLO**, **CASTILLO** drove the two women to a hotel after the Ford Explorer was taken to a mechanic shop, believed to be for the purpose of pumping the liquid methamphetamine from the gas tank. One month later, on December 20, 2018, the same Ford Explorer was driving back to Houston, TX and was stopped by a Fort Bend County Texas Police Officer. The gas tank of the Ford Explorer was discovered to contain approximately 30 kilograms of methamphetamine in liquid form. The driver was **CAMARILLO** and the passenger was **EXCINIA**.

11.    On July 26, 2019, **Ramon MARTINEZ** was arrested by Officer's with the Nacogdoches County Sheriff's department, in Nacogdoches County, Texas. **MARTINEZ** was arrested for transporting approximately 1.5 kilograms of heroin in his tractor/trailer. Affiant interviewed **MARTINEZ** after his arrest and **MARTINEZ** gave consent to search his cellular telephone. Within the text message log of **MARTINEZ** telephone, Affiant observed text messages between **MARTINEZ** and telephone number (346) 280-6082, a telephone believed to be used by **CASTILLO**. The text messages were made in the days leading up to **MARTINEZ** arrest and discussed prices to transport drugs as well as the location to meet to deliver the drugs. Affiant believes the text messages between **MARTINEZ** and **CASTILLO** were in regards to the 1.5 kilograms of heroin which were seized. Specifically, **MARTINEZ** asked for more money to transport "two pieces", because he was given "two" but had only agreed to transport "one piece".

The 1.5 kilograms of heroin which was seized was wrapped in two separate bundles, matching **MARTINEZ** description of "two pieces".

12. **CALVILLO** and **CASTILLO** are believed to have operated a methamphetamine conversion lab located at a residence on Mountfield Street in Houston, Texas. On several occasions, Affiant observed **CALVILLO** and **CASTILLO** at the residence on Mountfield Street. On one such occasion, Affiant observed **CASTILLO** throw away several bags of trash which were later recovered by Affiant after the trash bin was placed at the curbside. The trash bags contained several pots and pans, one of which contained residue of a crystalline substance which field tested positive for the potential presence of methamphetamine. On another occasion, Affiant observed **CALVILLO** throw away several bags of trash which were recovered by Agents. The bags were discovered to contain wrapping material consistent with the way cocaine bundles are packaged. The packaging material field tested positive for the potential presence of cocaine.

13. On January 8, 2020, **CASTILLO** was indicted in the Eastern District of Texas for violation of Title 21, United States Code Section 846 (Conspiracy to possess with intent to distribute and distribution of controlled substances) and Title 18, United States Code section 1956(h) (Conspiracy to commit money laundering). The arrest warrant is expected to be executed on February 11, 2020.

E. <u>FINANCIAL INVESTIGATION</u>

14. During the course of this investigation, agents have identified the **Target Residence** as a location in which **CASTILLO** has invested his drug proceeds. During the investigation, Agents observed several contractors at the **Target Residence** performing a whole house renovation. Affiant believes **CASTILLO** purchased the residence and began renovating the house with drug

money. For example, during an intercepted telephone conversation between **CALVILLO** and **CASTILLO** on November 30, 2018, **CASTILLO** and **CALVILLO** discussed how fast the contractors were renovating the house. **CASTILLO** stated, "these motherfuckers moving too fast, man. I'm, I'm goin' need Kendall to go and come back two (2) times". Kendall is a reference to **Kendall THOMPSON**. **THOMPSON** was identified as a purchaser of drugs from **CALVILLO** and **CASTILLO**. Affiant believes **CASTILLO's** statement about "Kendall" going and coming back two times is a reference to **CASTILLO** needing **THOMPSON** to transport two loads of drugs so **CASTILLO** can received the drug money to pay for his home renovations. Affiant knows **THOMPSON** is a drug trafficker because Affiant seized approximately one kilogram of heroin from **THOMPSON** in August 2018, and approximately $16,580 of suspected drug proceeds in January 2019. **THOMPSON** also had $137,585 in suspected drug proceeds seized from him from police officers in Baton Rouge, Louisiana in September 2018.

15. Affiant believes the **Target Residence** is a property owned by **CASTILLO**. According to a publicly available records search of the Harris County Appraisal District, the **Target Residence** is owned by Maria D Mendoza, and has been since 2007. In 2019, the **Target Residence** assessed value was $197,000. Affiant believes **CASTILLO** purchased the property and left the property in the name of Maria D Mendoza as a means of hiding his ownership as a means to avoid law enforcement discovering his assets.

16. According to the Texas Workforce Commission, **CASTILLO** has no records of employment. Additionally, at no time during the investigation did Agents or Investigators observe **CASTILLO** travel to a place of employment. **CASTILLO** has no known legitimate source of income.

17. Coupled with the fact that **CASTILLO** does not have any verifiable employment or legitimate source of income, Affiant believes **CASTILLO** used drug proceeds to pay for and purchase the **Target Residence**.

18. Affiant believes the search of the **Target Residence** has a high probability of containing documents related to the sale/purchase of the **Target Residence** and other assets owned by **CASTILLO**. Affiant also believes the closing documents for the purchase of the **Target Residence** are likely to be stored at the Target Residence, will reveal the source of funds used to purchase the real estate properties. Affiant believes the financial documents will prove **CASTILLO's** drug money laundering methods employed by using the drug proceeds to purchase the real estate properties.

F. <u>TRAINING, EXPERIENCE AND KNOWLEDGE OF NARCOTICS INVESTIGATIONS</u>

19. I have specialized training and experience in narcotics smuggling and distribution investigations. I have participated in numerous narcotics investigations as a case agent and in a subsidiary role. I have debriefed numerous defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations. I have participated in many narcotics trafficking-related surveillance operations, and I have participated in many investigations involving court-authorized interceptions of wire communications. I am familiar with narcotics traffickers' methods of operation in the distribution, storage, and transportation of narcotics, the collection of money which represents the proceeds of narcotics trafficking, and the laundering of proceeds derived from narcotics trafficking. I am aware that narcotics traffickers

often communicate with their associates and/or customers via cellular telephones and other electronic means. I am also aware narcotics traffickers often change or switch cellular telephones and other communication devices to maintain the covertness of their activities. I have received training specifically with respect to investigations involving methamphetamine and in complex conspiracies utilizing electronic surveillance. Based on my training and experience, as outlined above, and the facts and circumstances of this investigation, as well as consultations with experienced narcotics investigators in the DEA and other agencies, I know that:

  a. Persons involved in the illegal distribution of controlled substances frequently engage in transactions involving large quantities of narcotics often receive and/or distribute quantities of narcotics on a consignment basis, often referred to as being "fronted". These narcotics transactions often involve large amounts of controlled substances and/or U.S. Currency and often require the keeping of records which detail amounts of narcotics obtained and distributed, names, locations, and dates of distribution, and amounts of monies received and/or disbursed as payment for narcotics and other illegal services. Persons involved in the trafficking of controlled substances frequently maintain records of these illegal activities in the form of papers, books, notes, ledgers, and other documents. Further, persons involved in the illegal importation, storage, transportation, and distribution of controlled substances frequently maintain these records in residences owned by them, or over which they exercise dominion and control. As such, it is common for individuals involved in large scale narcotics trafficking to maintain books, records, receipts, notes journals, ledgers and/or other documents relating to the transportation and distribution of narcotics and narcotics proceeds at their residence. The term "records" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including

computers and any other electrical, electronic, or magnetic form, such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, CD-ROM's, optical discs, backup tapes, printer buffers, smart cards, memory calculators, pagers, personal digital assistants, such as "Palm Pilots" computers, as well as readouts or printouts from any magnetic storage device, any handmade form, any mechanical form, and any photographic form;

  b. The trafficking of controlled substances generates large quantities of U. S. currency which represent payment for quantities of narcotics, payment for the transportation and storage of narcotics, or profits derived from the sale of narcotics. The processing and storage of these large amounts of currency often requires the use of various items, such as money counters, denomination bands, ledgers and adding machines. I further know that persons involved in the trafficking of controlled substances frequently convert this U. S. Currency into other items of value including, but not limited to, jewelry, automobiles, financial instruments and other items of value. I know that these sums of U.S. currency, or other items of value, as well as the items necessary to process and store this U.S. currency, are frequently stored and/or secreted in residences and other properties under the dominion and control of those involved in the trafficking of narcotics;

  c. Persons involved in the illegal distribution of controlled substances and the laundering of the proceeds of these illegal activities, are frequently joined, aided, abetted, and assisted by co-conspirators, associates, and subordinates in their illegal enterprises; and frequently maintain names, addresses, phone numbers, and other information on these persons in address books, electronic organizers, diaries, planners, notebooks, photographs, and other documents. Further, persons involved in the illegal distribution of narcotics, and the associated laundering of

illicit proceeds, frequently maintain these books and records in places readily accessible to them, and under their dominion and control;

   d. Persons involved in the illegal distribution of controlled substances frequently use telephones, digital display paging devices, and cellular telephones to conduct narcotics transactions. These persons often attempt to obtain these communication devices through the use of fraudulent or fictitious names, or through the use of nominee subscribers. I further know that evidence of these transactions and the identities of co-conspirators and others involved in narcotics trafficking can be obtained from telephone, pager, and cellular telephone bills and statements; as well as from the telephones, cellular telephones, pagers, and associated caller identification devices or answering machines. These bills and statements, as well as the communications devices, are often stored and maintained in residences and other areas under the dominion and control of those involved in narcotics trafficking;

   e. Persons involved in the illegal distribution of controlled substances and the laundering of the proceeds of their illegal activities often attempt to conceal or disguise the source, nature, and location of illegal proceeds by utilizing legitimate banking and other financial institutions to conceal or disguise the nature of the proceeds of illegal activities. This is often accomplished through the use of safe deposit boxes, financial accounts, and financial instruments obtained in false or fictitious names, or through the use of nominee account and/or safe deposit box holders; or by commingling illegal funds with legitimate funds and earnings in an effort to legitimize the source of these illegal funds or disguise the existence of these illegal funds. I further know that bank accounts, certificates of deposit, stocks, mutual funds, and safe deposit boxes often contain monies, in whole or in part, which represent the proceeds of illegal activities. The

existence of these financial accounts, financial instruments, and safe deposit boxes generate records produced by the banking and financial institutions. These records are often maintained in areas which are readily accessible to, and under the dominion and control of those involved in illegal activities;

    f.    Criminal organizations involved in the large-scale trafficking of controlled substances frequently attempt to invest their illegal proceeds into legitimate businesses as a means of laundering their drug profits. These organizations often attempt to acquire interest or control of businesses which conducts a large portion of their business in the form of cash and which makes the commingling of drug proceeds with legitimate income an easier task. The acquisition of these legitimate business interests with drug proceeds often creates documentary evidence in the form of bank records, corporation records, financial statements, loan agreements, partnership agreements, and other documentary evidence which is frequently stored or maintained in areas under the dominion and control of the heads of the criminal organization;

    g.    Persons involved in the illegal distribution of controlled substances, often have in their possession or control, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns, machine guns and other weapons that are used to protect and secure their person.

### G. SEARCH WARRANT APPLICATION

20. As outlined above, I know that individuals engaged in the trafficking of large quantities of narcotics generally operate on a cash basis.

21. As outlined above, I know that individuals engaged in the trafficking of large quantities of narcotics attain large sums of currency and attempt to conceal the illegal proceeds. Based on

information derived during the investigation there is probable cause to believe that upon search of the **Target Residence**, agents will locate evidence including, but not limited to, narcotics- namely cocaine, bulk currency, safe deposit records, safe deposit keys, bank records, books, notes, ledgers, jewelry, vehicles and other assets or financial records related thereto.

22. Based upon the foregoing, I respectfully submit that there is probable cause to believe that the evidence described in Attachment B will be found in the **Target Residence**, which constitute evidence of the commission of, or are designed or intended as a means of the violation of the federal narcotics laws, including but not limited to the conspiracy to possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Sections 846, and the laundering of monetary instruments and relating to engaging in monetary transactions involving property derived from specified unlawful activities, and conspiracy to do the same, in violation of Title 18, United States Code, Section 1956.

23. For the reasons set forth above, I respectfully request that the Court issue a search warrant for the **Target Residence** for the items set forth in Attachment B.

_____
Jason Havemann, Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN BEFORE ME THIS 7th DAY OF February, 2020.

_____
Christina A. Bryan
UNITED STATES MAGISTRATE JUDGE

SW Affidavit for 2107 Gray Hawk Lane, Katy, Texas 77449        Page **13** of **15**